| Case No. | **CV 18-8158-DMG (SKx)** | Date | May 2, 2019 |
|---|---|---|---|

| Title | *Mohammed Shams v. CVS Health Corporation, et al.* | Page | 1 of 11 |
|---|---|---|---|

Present: The Honorable      DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:**  **IN CHAMBERS - ORDER RE PLAINTIFF'S MOTION TO REMAND [12], DEFENDANTS' MOTION TO COMPEL ARBITRATION [25], AND DEFENDANTS' MOTION FOR MONETARY SANCTIONS [37]**

On August 16, 2018, Plaintiff Mohammed Shams filed a Complaint against Defendants CVS Health Corporation and CVS Pharmacy, Inc. in Los Angeles County Superior Court, alleging the following state-law causes of action: (1) discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) failure to prevent discrimination in violation of FEHA; (3) failure to pay wages; (4) failure to pay all wages at time of discharge; (5) failure to provide an accurate itemized statement; (6) violation of the Unfair Competition Law; (7) retaliation in violation of California Government Code section 12940(h); (8) retaliation in violation of public policy; and (9) failure to provide a personnel file in violation of California Labor Code section 1198.5. Removal Notice, Ex. A at 5–24 ("Compl.") [Doc. # 1-1].[1]

On September 20, 2018, Defendants removed the action, invoking this Court's diversity jurisdiction under 28 U.S.C. section 1332(a). Removal Notice at 1–13 [Doc. # 1]. On October 22, 2018, Plaintiff filed a Motion to Remand ("MTR"). [Doc. # 12.] On February 26, 2019, Defendants filed a Motion to Compel Arbitration ("MCA"). [Doc. # 25.] On April 4, 2019, Defendants filed a Motion for Monetary Sanctions ("Sanctions Motion"). [Doc. # 37.] All three motions have since been fully briefed. [Doc. ## 17, 19, 31, 35, 41, 44.] The Court finds these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having duly considered the parties' written submissions, the Court **DENIES** Plaintiff's MTR, **GRANTS** Defendants' MCA, and **DENIES** Defendants' Sanctions Motion.

**I.**

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

## FACTUAL BACKGROUND[2]

Plaintiff immigrated from Bangladesh to the United States in 1985. Compl. at ¶ 19 [Doc. # 1-1]. He is a practicing Muslim. *Id.* at ¶ 10. In 1991, Plaintiff was hired by Defendants as a cashier. *Id.* at ¶ 19. Defendants later promoted him to the position of shift supervisor. *Id.* Defendants constructively terminated Plaintiff in December 2017. *See id.* at ¶ 89.

Plaintiff alleges (*inter alia*) that Defendants' agents and employees violated his rights under the California Labor Code and discriminated against him on the basis of his race, religious creed, national origin, physical disability, and medical condition. *See id.* at ¶¶ 2–3 (alleging violations of the Labor Code and that Defendants subject Plaintiff to discriminatory treatment).[3] For instance, beginning in 2014, Plaintiff's store manager did not permit him to leave the store during Plaintiff's breaks. *See id.* at ¶¶ 20–21. This store manager also required Plaintiff to respond to the store security alarm after hours, and did not allow Plaintiff to be compensated for that time. *See id.* at ¶ 22. Further, Defendants required Plaintiff to remain at the work site after he clocked out so that loss prevention could conduct a security check of his bags. *See id.* at ¶ 29. These security checks often took 10 to 15 minutes to complete. *See id.*

Another store manager forced Plaintiff to work during one of the last two days of Ramadan, even though he had specifically requested time off for both of those days. *See id.* at ¶¶ 30–31. That manager later refused to allow Plaintiff to take two weeks off of work after he had an angiogram, notwithstanding the fact that Plaintiff provided a doctor's note to substantiate that request. *See id.* at 32. Instead, the manager allowed Plaintiff to take only ten days off of work. *See id.* Additionally, Defendants refused to reasonably accommodate Plaintiffs' heart problems and other health-related issues, and terminated him after his long-term leave expired. *See id.* at ¶ 33.

Plaintiff claims that, "[a]s a proximate result of [Defendants'] discrimination, [he] has suffered and continue[s] to suffer substantial losses in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continue[s] to suffer embarrassment, anger,

---

[2] This Part merely summarizes the Complaint's factual allegations. The Court expresses no opinion on their veracity.

[3] One portion of the Complaint suggests that Defendants also discriminated against Plaintiff on the basis of his sexual orientation. *See* Compl. at ¶ 56 ("[Defendants] knew or reasonably should have known that the failure to provide any or adequate education, training, and information as to its personnel policies and practices regarding discrimination and harassment directed at gay and lesbian employees and regarding how to treat complaints or other resistance to such discrimination would result in discrimination directed at the Plaintiff, for complaining or resisting the same.") [Doc. # 1-1].

| | | | |
|---|---|---|---|
| Case No. | **CV 18-8158-DMG (SKx)** | Date | May 2, 2019 |

| | | | |
|---|---|---|---|
| Title | *Mohammed Shams v. CVS Health Corporation, et al.* | Page | 3 of 11 |

humiliation, frustration and other highly unpleasant mental anguish all in an amount according to proof." *See id.* at ¶ 5; *see also id.* at ¶ 45 ("As a proximate result of [Defendants'] discrimination, Plaintiff has suffered and continue[s] to suffer substantial losses and in earnings [sic], deferred compensation and other employment benefits, and have suffered and continue to suffer embarrassment, anger, humiliation, frustrating, and other highly unpleasant mental anguish."). Plaintiff also seeks to recover (*inter alia*) penalties under California Labor Code sections 203, 210, and 226.3, punitive damages, and attorneys' fees. *See id.* at 18–19, 24.

## II.
## EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE

Defendants objected to and moved to strike the declarations supporting Plaintiff's Reply to Defendants' Opposition to the MTR. [Doc. # 20.] Similarly, Plaintiff lodged objections to declarations submitted in connection with Defendants' MCA. [Doc. ## 33, 34.] Any evidentiary objection or motion to strike that is not explicitly addressed herein is **OVERRULED** or **DENIED** as **moot**, given that the inclusion or exclusion of such evidence would not change the Court's ruling on the MTR or the MCA.[4]

## III.
## PLAINTIFF'S MOTION TO REMAND

Under 28 U.S.C. section 1441(a), an action may be removed from a state court to a federal district court if the latter would have had "original jurisdiction" over the action had it been filed in that court. Pursuant to 28 U.S.C. section 1332(a), a district court shall have jurisdiction over a civil action where the matter in controversy exceeds the sum or value of $75,000 (excluding interest and costs) and there is complete diversity of citizenship between the parties. "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, . . . [t]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount controversy exceeds [the jurisdictional amount]." *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). In considering whether the removing defendant has satisfied its burden, the court "may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

---

[4] For that same reason, the Court declines Defendants' invitation to issue an order to show cause requiring Plaintiff to identify "what, if any, evidentiary support exists for the representations made" in the declarations accompanying his Reply to Defendants' Opposition to the MTR. *See* Defs.' Obj. & Mot. to Strike at 3 [Doc. # 20].

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted).

There is no dispute that Section 1332(a)'s complete diversity requirement has been satisfied, as Plaintiff does not contest Defendants' assertions that CVS Health is a citizen of Delaware and Rhode Island, CVS Pharmacy is a citizen of Rhode Island, and Plaintiff is a citizen of California. *See* Removal Notice at ¶¶ 11–12, 14–19 [Doc. # 1]; MTR at 10 ("[T]here exists diversity in citizenship . . . .") [Doc. # 12]. Rather, Plaintiff contends that the amount in controversy does not exceed the $75,000 jurisdictional threshold.

To establish the amount of economic damages sought by Plaintiff, Defendants offer the declaration of John Seymour, a CVS Pharmacy employee who is "familiar with the personnel and operational policies that were applicable to employees during the time of [Plaintiff's] employment" and has "access to the personnel records for [Plaintiff]." *See* Seymour Decl. at ¶¶ 1–2 [Doc. # 4]. Seymour attests that CVS Pharmacy's personnel and payroll records reveal that during Plaintiff's final year of employment, his hourly rate was $17.70 and he worked approximately 35–40 hours per week. *See id.* at ¶ 3. The Court proceeds on the conservative assumption that Plaintiff was constructively terminated on December 31, 2017, given that Plaintiff does not identify the precise date of his termination.[5] *See* Compl. at ¶ 89 [Doc. # 1-1]. Further, Plaintiff impliedly admits it is reasonable to assume that the matter will proceed to trial on March 17, 2020. *See* Jt. Rule 26(f) Report at 7 (the parties proposed that trial date) [Doc. # 21]. Given these facts, Plaintiff's estimated economic damages are at least $71,428.35.[6] *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("'Under FEHA, an employee . . . may be compensated for future loss of earnings.' . . . If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them." (quoting *Wysinger v. Auto Club of S. Cal.*, 157 Cal. App. 4th 413, 427 (2007))).

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff attests that, "[d]uring the time that Peter Lucas was [Plaintiff's] manager the hours of full time employees, including

---

[5] In connection with the MCA, a CVS Pharmacy Human Resources representative attests that Plaintiff's employment ended on December 14, 2017. *See* Brown Decl. at ¶ 8 [Doc. # 28]. Plaintiff objects to this testimony on the grounds of lack of foundation, speculation, and violation of the best evidence rule. *See* Pl.'s Objs. re Brown Decl. at 5 [Doc. # 33]. Because the amount-in-controversy requirement would be satisfied even if Plaintiff was terminated on December 31, 2017, the Court **OVERRULES** this objection as **moot**.

[6] This calculation assumes that Plaintiff would earn $17.70 per hour and work 35 hours per week for 115.3 weeks.

---

[those belonging to Plaintiff], were reduced from 40 hours to 36 hours, to 26 hours, and to 18 hours." *See* Shams Decl. at ¶ 2 [Doc. # 19-2]. He also states that "while Laneshia Pryor was the store manager, [Plaintiff's] hours were also reduced on many occasions." *See id.* at ¶ 3. This testimony has little apparent relevance to the Court's calculation of Plaintiff's backpay and frontpay, however, as neither of these individuals were Plaintiff's store manager when he was terminated and there is no indication that either of them have returned to that position. *See* Compl. at ¶¶ 20–23, 30–32 (alleging that Pryor took over the position from Lucas in mid-2015, Pryor left that position in 2016, and Anthony Davis became the store manager in mid-2016) [Doc. # 1-1]. The Court also rejects Plaintiff's assertion that Seymour's declaration is insufficient to establish the amount in controversy simply because the payroll records upon which he relies are not attached to it. *See* MTR 12–13; *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) ("To satisfy its burden in this case, the removing defendant . . . supplied an affidavit to show that the potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies [the defendant's] burden."); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150–51 (S.D. Cal. 2018) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this . . . premature stage of the litigation." (alteration in original) (internal quotation marks omitted)); *cf. Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").[7] Therefore, Defendants have shown by a preponderance of the evidence that Plaintiff seeks at least $71,428.35 in economic damages.

As the economic damages are accounted for, Defendants need only show that Plaintiff requests at least $3,571.66 in other monetary relief. Defendants have offered evidence showing that in May 2017, two of Plaintiff's lead counsel were awarded attorneys' fees at hourly rates of $400 and $450, respectively. *See* Haeffele Decl. at ¶ 4 [Doc. # 6]; Haeffele Decl., Ex. B at 30–33 (Order Awarding Attorneys' Fees in *Hartshorne v. Metlife, Inc.*, BC 576608 (Cal. Superior

---

[7] Plaintiff further claims that he made a request for certain work-related accommodations, which he believes could have led Defendants to assign him to a position with lower pay and "a decreased work schedule" (*e.g.*, he could walk for only 50% of the shift). *See* Reply at 5; *see also* MTR at 12 ("Due to Plaintiff's health-related leave of absence and the fact that he requested accommodations to continue working, using the approximate hours he worked per week when he was healthy and [the] amount Plaintiff was paid when he last worked for Defendant[s] is speculative."). The Court need not address this argument further because Plaintiff does not support his assertions regarding the accommodation request with any citation to the evidentiary record, nor does he point to any evidence showing that Defendants would have reduced his pay and/or weekly schedule or that he was unable to work full-time when he was terminated. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015) ("[A]ttorney argument is not evidence on which the court can rely."); *see also* Reply re MTR at 5 (asserting Plaintiff could work "*no more* than 8 hours per day" (emphasis added)) [Doc. # 19]. Therefore, he has failed to rebut Defendants' evidence regarding his economic damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**JS-6**

Case No.    **CV 18-8158-DMG (SKx)**                                    Date    May 2, 2019

Title    *Mohammed Shams v. CVS Health Corporation, et al.*                    Page    6 of 11

Court May 2, 2017), which provides the hourly rates for Justin Karczag and Muhammed Hussain) [Doc. # 6-2]. Although Plaintiff's counsel claims that these hourly rates are now "different," they do not argue that the rates somehow declined.[8] *See* Hussain Decl. at ¶¶ 4–5 [Doc. # 19-1]. At the $400 hourly rate, Plaintiff's counsel would exceed the amount in controversy threshold after spending fewer than nine hours working on this case. Even assuming that many tasks in this case are assigned to attorneys with lower hourly rates, *see id.* at ¶ 2, lead trial counsel would likely bill at least nine hours in connection with discovery and/or trial preparation. Therefore, the preponderance of the evidence demonstrates that the amount in controversy exceeds $75,000.[9] *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."); Cal. Gov't Code §12965(b) ("In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . . reasonable attorney's fees and costs . . . .").

## IV.
### DEFENDANTS' MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[10] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an agreement," the court "shall on application of one of the parties stay the

---

[8] In fact, it appears that Hussain's hourly rate increased from $400 to $450. *See* Hussain Decl. at ¶ 2 (attesting that his "regular hourly rate for matters such as this is $450 per hour," but failing to clarify whether that rate applies to employment cases generally or merely preparing oppositions to motions for Rule 11 sanctions) [Doc. # 42]. In any event, for the reasons discussed in this section, the amount-in-controversy requirement would be satisfied even if Hussain's hourly rate remained at $400.

[9] Plaintiff also suggests that the attorneys' fee award will probably be low because "[t]here is a high likelihood of settlement in the case at bar . . . ." *See* Reply re MTR at 6 [Doc. # 19]. This argument fails because it is not supported by a citation to evidence. *See Lofton*, 308 F.R.D. at 286. Further, given the Court's disposition of the MTR, it need not ascertain the amount of any other monetary relief sought in Plaintiff's Complaint (*e.g.*, penalties for Labor Code violations).

[10] Plaintiff does not dispute that the FAA governs the Arbitration Policy discussed in this Part. *See* Defs.' Mem. re MCA at 3, 7–8 (advancing this contention) [Doc. # 29]; Opp'n re MCA at 6–22 (failing to dispute this contention) [Doc. # 31]; *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

---

trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *See* 9 U.S.C. § 3.

To determine whether the parties agreed to delegate to an arbitrator the authority to decide the arbitrability of a dispute, a federal court must "apply ordinary state-law principles that govern the formation of contracts." *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 920 (9th Cir. 2011) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Even if the delegation provision satisfies state-law formation requirements, a court may enforce that provision only if it "clearly and unmistakably delegates arbitrability questions to the arbitrator . . . ." *See Brennan v. Opus Bank*, 796 F.3d at 1125, 1128–29, 1132 (9th Cir. 2015). If a party raises an unconscionability challenge to a delegation provision, then "the court must consider only arguments 'specific to the delegation provision'"—*i.e.*, not arguments that are generally applicable to the arbitration agreement as a whole. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 73 (2010)).

### A.     Plaintiff Entered into a Contract to Arbitrate His Disputes Against Defendants, Which Contains a Clear and Unmistakable Delegation Clause

On or around October 24, 2014, Plaintiff completed an electronic training course titled "Arbitration of Workplace Legal Disputes," which was formatted as a slideshow. *See* Shams Decl. at ¶ 4 ("In or around October 2014, I was provided a training entitled Arbitration of Workplace Legal Disputes that I was urged to finish as soon as possible. . . . I completed the training on or around October 24, 2014.") [Doc. # 32]; Bailey Decl. at ¶¶ 1, 4 ("On a rolling basis beginning in 2014, CVS [Health's] employees were required to take a LEARNet training course that introduced the Arbitration Agreement and its terms, entitled *Arbitration of Workplace Legal Disputes* (Course No. 800305). A true and correct copy of the training course, entitled Arbitration of Workplace Disputes, is attached here as Exhibit 2.") [Doc. # 27]; Bailey Decl., Ex. 2 at 1–6 (Arbitration of Workplace Legal Disputes training course) [Doc. # 27-2]. The third slide of the course required an employee to click on a link to a .pdf document titled "CVS Health Colleague Guide to Arbitration." *See* Bailey Decl. at ¶ 5 [Doc. # 27]; Bailey Decl., Ex. 2 at 3 (the third slide) [Doc. # 27-2]. An employee could not continue past the third slide unless he or she clicked the link to open the document. *See* Bailey Decl. at ¶ 5 [Doc. # 27].

The CVS Health Colleague Guide to Arbitration contains an arbitration agreement ("Arbitration Policy"). *Id.*; *see* Bailey Decl., Ex. 3 at 9–12 (Arbitration Policy) [Doc. # 27-3]. The Arbitration Policy provides that "CVS Health (including its subsidiaries) and its Employees agree that any . . . []Covered Claim[] will be decided by a single arbitrator through final and

binding arbitration only and will not be decided by a court or jury or any other forum . . . ." *See* Bailey Decl., Ex.3 at 9 [Doc. # 27-3].[11]  It further provides that "Employees accept this Policy by continuing their employment after becoming aware of the Policy," and that "Covered Claims" are "any and all legal claims, disputes or controversies . . . that an Employee may have now, or in the future, against CVS Health, its parents, subsidiaries, successors, or affiliates," including "disputes arising out of or relating to the validity, enforceability or breach of this Policy . . . ." *See id.* at 9–10.

To complete the training course, an employee was required to click a button to acknowledge certain statements that were on the fifth slide. *See* Bailey Decl. at ¶ 5 [Doc. # 27]; Bailey Decl., Ex. 2 at 5 (fifth slide) [Doc. # 27-2].  The fifth slide stated, *inter alia*, that the employee taking the course "ha[d] the opportunity, for a limited time only, to opt out of the Policy" by sending a "written signed and dated letter" that was "postmarked no later than 30 days after the date [the employee] first received or viewed a copy of this Policy[.]"  *See* Bailey Decl., Ex. 2 at 5 [Doc. # 27-2].  The slide also said that "by being covered by the Policy and not opting out, [the employee] and CVS Health [were] obligated to go to arbitration instead of court to resolve legal claims covered by the Policy[.]"  *See id.*  CVS Health has no record of receiving an opt-out letter from Plaintiff, and Plaintiff does not contend that he mailed an opt-out letter to Defendants.[12]  *See* Bailey Decl. at ¶ 6 [Doc. # 27].[13]

Accordingly, Defendants have established that Plaintiff agreed to be bound by the Arbitration Policy.  *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("By not opting out within the 30–day [opt-out] period, [the employee] became bound by the terms of the arbitration agreement.").  Further, Plaintiff does not challenge Defendants' assertions that the other essential elements of a contract have been satisfied—*i.e.*, the parties

---

[11] CVS Pharmacy is a subsidiary of CVS Health.  *See* Luker Decl. at ¶ 3 [Doc. # 30].

[12] Plaintiff purports to opt out of the Arbitration Policy in his Opposition, as he claims that "there is no evidence that Plaintiff was actually provided with a copy of the Arbitration Policy."  *See* Opp'n re MCA at 10 [Doc. # 31].  This argument rests on an erroneous premise.  Plaintiff concedes that he completed the training course on or about October 24, 2014, *see* Shams Decl. at ¶ 4 [Doc. # 32], and Defendants offer evidence showing that he could not have completed the training course without clicking the link to .pdf copy of the CVS Health Colleague Guide to Arbitration, *see* Bailey Decl. at ¶ 5 [Doc. # 27].  Thus, Plaintiff may not opt out at this juncture.

[13] Plaintiff objects on the following grounds to the portions of Bailey's declaration that are cited in this section:  lack of foundation, lack of personal knowledge, and improper opinion.  *See* Pl. Evid. Objs. re Bailey Decl. at 2–4 [Doc. # 34].  The Court **OVERRULES** these objections.  As CVS Health's Director for Talent Management, Bailey has personal knowledge of the Arbitration of Workplace Legal Disputes training course, the CVS Health Colleague Guide to Arbitration, and the policies, practices, and records relating thereto.  *See* Bailey Decl. at ¶¶ 1–2 [Doc. # 27]; Fed. R. Evid. 602, 701.

were capable of contracting, there was a lawful object, and sufficient consideration supports the contract. *See* Cal. Civ. Code § 1550; Defs.' Mem. re MCA at 10–11 [Doc. # 29]; Opp'n re MCA at 6–22 (failing to dispute these assertions) [Doc. # 31]. Therefore, Plaintiff and Defendants formed a contract to arbitrate "Covered Claims," including "disputes arising out of or relating to the validity, enforceability or breach of this Policy . . . ."   *See* Bailey Decl., Ex. 3 at 9–10 (Arbitration Policy) [Doc. # 27-3]; *Stichting Pensioenfonds*, 802 F. Supp. 2d at 1132. Further, the Ninth Circuit has held that a provision that used language substantially similar to that of the instant delegation provision satisfies the clear and unmistakable evidence standard. *See Mohamed*, 848 F.3d at 1207–10 (provision stating in pertinent part that "[s]uch disputes [that are subject to arbitration] include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision").

Accordingly, Plaintiff must arbitrate the arbitrability of his claims against Defendants unless he prevails on a defense to the delegation clause.[14] *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012))). The only defense Plaintiff raises is unconscionability, which is discussed in the next section. *See* Opp'n re MCA at 6 [Doc. # 31].

**B.     Plaintiff Fails to Establish that the Delegation Provision Is Unconscionable**

To prevail on an unconscionability defense, the party seeking to avoid arbitration must show that "the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *See Poublon*, 846 F.3d at 1260. Plaintiff's arguments regarding substantive unconscionability do not concern the delegation clause, but instead target only the attorneys' fees and costs provision. *See* Opp'n re MCA at 21 ("[T]his Policy was, as drafted, CVS' attempt to gain for itself an unfair advantage against its employees who almost certainly don't know what statues allow for them to get attorneys' fees and dissuade employees from bringing claims, even in arbitration.") [Doc. # 31]. Because Plaintiff has not shown that the

---

[14] Plaintiff argues that the Arbitration Policy is procedurally unconscionable because it is unclear which entities are parties to it. *See* Opp'n re MCA at 18–19 [Doc. # 31]. To the extent Plaintiff contends that one or both Defendants lack standing to invoke the Arbitration Policy, that argument fails because both Defendants are parties thereto. *See* Bailey Decl., Ex.3 at 9 ("CVS Health (including its subsidiaries) and its Employees agree that any . . . []Covered Claim[] will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum . . . .") [Doc. # 27-3]; *cf. Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 Fed. App'x 472, 475 (9th Cir. 2018) (holding that agents of one of the defendants had standing to enforce an arbitration agreement because the agreement defined "the Company" subject thereto to include agents of that defendant).

delegation provision *itself* is unconscionable, the Court must enforce it and compel Plaintiff to arbitrate the arbitrability of his claims. *See Brennan*, 796 F.3d at 1132 ("Because a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable.").

The Court exercises its discretion to stay (and not dismiss) this matter pending arbitration. *See Johnmohammadi*, 755 F.3d at 1074 ("[A] district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration.").

## V.
## DEFENDANTS' SANCTIONS MOTION

Defendants argue that the Court should sanction Plaintiff and his counsel pursuant to Rule 11 because they made certain misrepresentations in the course of opposing Defendants' MCA. *See* Defs.' Mem. re Sanctions Mot. at 2–3 [Doc. # 38]. Specifically, Defendants claim that the following statement in Plaintiff's declaration is false: "At the time I signed the [Arbitration of Workplace Legal Disputes] training, electronically, I was not familiar with the California Fair Employment and Housing Act or the other employment fee shifting statutes. I only became aware of these statutes after I retained counsel on this case." *See id.* at 3 (quoting Shams Decl. at ¶ 5 [Doc. # 32]). Defendants also contend that the following text from Plaintiff's Opposition to the MCA is false: "'[For] Plaintiff, who is unsophisticated and for whom English is not his first language, not providing an opt-out form and forcing the employee to draft [sign, and date] an undefined statement clearly stating his or her intention to opt out' made [Defendants'] 30-day opt-out provision 'essentially meaningless.'" *See id.* (quoting Opp'n re MCA at 11 [Doc. # 31]). Defendants claim that a letter that Plaintiff sent to them on June 15, 2014 demonstrates that the aforementioned statements are false. *See id.* at 2–3. The letter asserted that Plaintiff was "readily knowledgeable of the Family and Medical Leave Act [FMLA] and the California Family Rights Act [CFRA] which are Federal and State Leave laws," and raised a litany of complaints regarding Plaintiff's working conditions, including the charge that Plaintiff's supervisor had "refuse[d] to allow any employee two 15 Minute breaks in any eight hour shift."[15] *See id.* (quoting Bluver Decl., Ex. D at 4–5 (June 15, 2014 Letter) [Doc. # 40-4]).

---

[15] For the first time in Defendants' Reply, they suggest that Plaintiff's counsel should be sanctioned for "misrepresent[ing] [in the MTR] that economic damages and attorneys' fees at stake in this litigation should be calculated as of the date of Defendants' removal." *See* Reply re Sanctions Mot. at 3 n.1 [Doc. # 44]. The Court

The decision to impose a Rule 11 sanction is committed to this Court's sound discretion. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1126 (9th Cir. 2002) ("We review the district court's decision to impose Rule 11 sanctions—and, if they are warranted, the reasonableness of the actual amount imposed—for abuse of discretion."); Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction . . . ." (emphasis added)). In determining whether to impose Rule 11 sanctions, courts "resolve all doubts in favor of the signer" of the filing. *See Rodick v. City of Schenedctady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (quoting *Associated Indem. Corp. v. Fairchild Indus.*, 961 F.2d 32, 35 (2d Cir. 1992)). Here, the parties dispute whether Plaintiff personally drafted the June 15, 2014 letter. *See, e.g.*, Shams Decl. at ¶ 5 (asserting that a law school graduate drafted it on Plaintiff's behalf) [Doc. # 43]. Assuming *arguendo* that Plaintiff actually prepared the letter, however, Plaintiff's claim that he was familiar with the FMLA and the CFRA is not squarely inconsistent with his testimony that he lacked familiarity with FEHA and other fee-shifting statutes. Further, the fact that Plaintiff sent a letter raising complaints regarding his working conditions does not unequivocally demonstrate that he understood how to opt out of the Arbitration Policy. Rather, reasonable attorneys could disagree on these issues.

Therefore, the Court **DENIES** Defendants' Sanctions Motion.[16]

## VI.
## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's MTR, **GRANTS** Defendants' MCA, **DENIES** Defendants' Sanctions Motion, and **STAYS** all proceedings pending the completion of arbitration. This matter shall be administratively closed until such time as the parties move, either jointly or separately, to reopen it. The parties shall notify the Court within **ten days** after the receipt of an arbitral ruling or other final disposition of their dispute, whichever is later, and inform the Court how they wish to proceed with this case. The May 3, 2019 hearing on Defendants' Sanctions Motion is **VACATED**.

**IT IS SO ORDERED.**

---

rejects this argument because it is untimely. *See Zamani v. Carnes*, 491 F.3d 990, 996 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[16] For the reasons discussed in this section, the Court likewise declines Plaintiff's invitation to impose Rule 11 sanctions on Defendants for filing their Sanctions Motion. *See* Opp'n re Sanctions Mot. at 8–9 [Doc. # 41].